## LYMAN A. AUSTIN, Appellant, v. ISAAC SHIPMAN, Respondent.

**Springfield Court of Appeals, November 6, 1911. Motion for Rehearing Overruled, December 8, 1911.**

1. **REAL PROPERTY: Title: Contract to Furnish Abstract Showing Title: Construction.** In a contract agreeing to convey real estate, the owner of the land agreed to "convey and assure to the party of the second part in fee simple, clear of all incumbrances whatever, by good and sufficient warranty deed and abstract of title." *Held*, that under the terms of the contract the vendor was bound to furnish an abstract of title showing a perfect title in him and that this construction is especially justified in the light of the subsequent actions and correspondence of the parties, whereby it appears that it was the intention of the vendor to assure a clear title by an abstract of the record transfers.

2. **CONTRACTS: Construction: Construction by Parties.** Where the parties to a contract have given it a particular construction, such construction would generally be adopted by the courts in giving effect to its provisions and the subsequent acts of the parties, showing the construction put upon the agreement themselves, are to be looked to by the court and in some cases may be controlling.

3. **REAL PROPERTY: Contract to Furnish Abstract Showing Title: Failure to Show Administration.** Where a vendor agrees to convey property under a written contract in which he covenants to furnish an abstract of title, showing perfect title in him, and it appears that the patentee to the land is dead and the vendor is claiming under deeds from the heirs of the patentee, but there is nothing in the abstract of title to show that an administration was had of the estate of the patentee, *Held*, that the abstract did not show a perfect title, according to contract.

4. ————: ————: ————: **Distinction Between Real Title and Record Title.** Under contracts for the conveyance of real estate, whereby the vendor agrees to furnish abstract showing a perfect title, nothing less than an abstract showing title will satisfy and no matter what the vendor's real title may be, it is not enough that the title be in fact perfect, but it must further appear to be such on the records of the county as epitomized in the abstract.

5. ———: ———: Construction: Abstract Must be Furnished Within Reasonable Time: Recovery of Money Paid. Under a contract to convey real estate, where the vendor agrees to furnish abstract showing perfect title, the usual construction would be that the abstract should be furnished before the vendee could be required to make final payments, and upon failure of the vendor, within a reasonable time, to furnish the abstract agreed upon, the vendee is entitled to rescind the sale and recover the money paid.

6. STATUTES OF LIMITATIONS: Administration: Debts Against Decedent's Estate. Prior to the enactment of Sections 188 and 189, Revised Statutes 1909, the Statute of Limitations did not run in favor of a decedent's estate during the time there was no administration.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans*, Judge.

REVERSED AND REMANDED (*with directions*).

*J. P. McCammon* for appellant.

(1) The land of Isaac Shipman, original patentee, descended subject to the payment of his debts and until the appointment of an administrator the Statute of Limitations did not begin to run against his debts. Woerner's Law of Administration, sec. 401; Ayers Admr. v. Donnell, Ext'r, 57 Mo. 398; Little v. Reid, 75 Mo. App. 398; Stanton v. Gibbons, 103 Mo. App. 267. (2) Defendant was obliged to furnish a good title,. a merchantable title to appellant. Every purchaser of land has a right to demand a title which shall protect him from anxiety, lest annoying, if not successful suits be brought against him. He should have a title which would enable him not only to hold his land, but to hold it in peace, and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value. Waterman Spec. Perf., sec. 412; Mastin v. Grimes, 88 Mo. 478; Fozier v. Graham, 146 Mo. 359. (3) Plaintiff's contract bound defendant to assure to him in fee simple, clear of all encumbrances

whatever, by a good and sufficient warranty deed and abstract of title the land purchased. It was not a compliance with its terms to try to assure by oral testimony or ex parte statements. Thompson v. Dickerson, 68 Mo. App. 535; Bruce v. Wolf, 102 Mo. App. 384; Smith v. Hutchison, 61 Mo. 88. (4) Under the laws of this State a purchaser of lands has the right to demand the title which shall protect him from anxiety. He should have a title which would enable him not only to hold his land, but to hold it in peace, and if he wishes to sell it to be reasonably sure that no flaw or doubt will come up to disturb its marketable value. Ives v. Bank, 124 S. W. 23.

*R. S. Hogan* for respondent.

NIXON, P. J.—On the 13th day of November, 1908, the plaintiff, Lyman A. Austin, entered into a written contract with Mullin & Durnell, real estate brokers at Mountain View, in Howell county, Missouri, for the purchase of 160 acres of land owned by the defendant, Isaac Shipman, in said county. The contract contained, among other provisions, the following:

" . . . *the said party of the first part will convey and assure to the party of the second part, in fee simple, clear of all encumbrances whatever by a good and sufficient warranty deed, and abstract of title,* the following lot, piece or parcel of ground, viz., 160 acres, owned by Isaac Shipman, situated in Howell county, Missouri, three miles southwest of Mountain View, said premises to be delivered in as good condition as when this contract is made, and the party of the second part hereby agrees to pay said party of the first part the sum of $3,700 in the manner following, $200 cash in hand paid, the receipt whereof is acknowledged, and the balance $3,500 to be paid by assuming a mortgage now against land of $1,480 and the balance $2,020

in sixty days from date, with interest at the rate of — per cent. per annum, and to pay all taxes, assessments or impositions upon said land subsequent to the year 1908 . . ."

The plaintiff, after entering into this agreement and paying the $200, returned to his home at Malta, Montana. An abstract of title to the land in question was sent to him, and, because his attorney in Montana advised him that it did not show a marketable title, he refused to consummate the deal. This suit was brought by him on June 7, 1910, in the circuit court of Howell county for the purpose of recovering the $200, his theory being, as stated in the petition, "that defendant agreed to furnish an abstract of title to said land showing the title thereto well vested in defendant clear of all encumbrances, and to convey the same to plaintiff by a good and sufficient warranty deed upon which plaintiff should pay the remainder of the purchase price," and that this agreement was breached by defendant in failing to furnish such an abstract of title. The issue was made by a general denial. The case was tried without a jury and judgment went for the defendant. Plaintiff has appealed.

The first conveyance shown by the abstract of title sent to plaintiff was to one Isaac Shipman, by patent. (This man is not the defendant.) Immediately following this conveyance are shown conveyances of this land or interests therein as follows: (1) Warranty deed from W. A. Norris and Zilpha J. Norris, his wife, to D. F. Shipman and W. I. Shipman. (2) Quit-claim deed from Charity C. McNiel and G. L. McNiel, her husband, to said grantees. (3) Quit-claim deed from D. F. Shipman and Mary J. F. Shipman, his wife, to W. I. Shipman (this is the defendant herein).

It seems that attached to the abstract of title was an affidavit of Zilpha J. Norris which purported to

160 App.—14

have been filed for record in the office of the recorder
of deeds of Howell county, Missouri, on November
20, 1908 (seven days after the date of the contract in
question), wherein she deposed that Isaac Shipman,
the entry-man, died in 1863, intestate, and that he left
as his only heirs at law, Zilpha J. Norris (formerly
Zilpha J. Shipman), Charity C. McNiel (formerly
Charity C. Shipman), D. F. Shipman, and Isaac Ship-
man; and that Martha A. Shipman, widow of the entry-
man, died on April 5, 1901.

The evidence in the case consisted largely of the
correspondence which ensued upon plaintiff's refusal
to accept the title as shown by the abstract.    Plain-
tiff's attorney gave him a written opinion on Decem-
ber 1, 1908, concerning alleged defects in the record
title as shown by the abstract furnished.    Among other
objections was the absence of anything in the abstract
to show by what right the conveyances mentioned
above (immediately following the patent to the entry-
man) were made, his position being that the recorded
affidavit of Zilpha J. Norris was no part of the record
title and had no right to be on the records of Howell
county, and that so far as the abstract went, the title
would appear to still be in the entry-man; also that
the title was dangerous because it appeared from said
affidavit that the entryman died in 1863, intestate,
and no administration of his estate is shown and that
deceased may have owed debts.

On January 7, 1909, plaintiff was notified by let-
ter that defendant has deposited a warranty deed and
the abstract in the Bank of Mountain View, to be
turned over to plaintiff upon compliance with his
agreeent.

At the close of the evidence, the plaintiff requested
and the court refused to give the following declara-
tions of law:

"1.    The court declares the law to be that under
the evidence the verdict and judgment must be for

the plaintiff for the amount sued for with interest from the date of payment."

"2. The court declares the law to be that the abstract of title offered in evidence did not show a perfect title free and clear of all encumbrance nor such a title as defendant could compel the plaintiff to accept."

"3. That since the abstract of title offered in evidence did not show any administration of the estate of Isaac Shipman, the father of defendant, the title of the land contracted, for by plaintiff so shown was and remained subject to the debts of said Isaac Shipman, and was not a merchantable title."

"4. There having been no administration of the estate of Isaac Shipman, or none shown by the abstract of title to the land in question, the said title so shown was not a merchantable title nor such a title as defendant was obliged to furnish plaintiff."

No declarations of law were given.

The whole controversy on this appeal turns upon the proper construction of the contract entered into by and between the parties. The respondent has not favored us with a brief but his contention would be that he was merely required to make good title and not to furnish an abstract which showed good title. The material clause in the contract is, "the said party of the first part will *convey and assure* to the party of the second part, in fee simple, clear of all encumbrances whatever *by a good and sufficient warranty deed, and abstract of title,* the following lot," etc. This evidently means that the grantor will assure a fee simple title—a title clear of all encumbrances—(excepting, of course, the deed of trust which the grantee was to assume) and, having *first* furnished an abstract showing such a title, convey by a good and sufficient warranty deed. He could not *convey* by an abstract of title; nor could he *assure* a fee simple title clear of all encumbrances by a good and sufficient warranty deed.

Therefore, in order to give *any meaning whatever* to the words, ''and abstract of title,'' it must be held that the intention was to assure a clear title by an abstract of the record transfers. That this was the construction placed upon the contract by both parties is amply evidenced by the subsequent events. The agreement was entered into on November 13, 1908. On November 20, 1908, there was filed for record in the office of the recorder of deeds of Howell county, Missouri, the affidavit of which a copy was attached to the abstract of title. Defendant was evidently then preparing to send the abstract for examination. On December 1, 1908, we find by his written opinion of that date that plaintiff's Montana lawyer has received and examined the abstract. On December 10, 1908, this abstract has been returned by plaintiff to defendant's agents, with the objections, for on that date defendant's attorney at West Plains, Missouri, writes to defendant that the objections are unfounded, and on the next day defendant's agents communicate this opinion of their attorney to the plaintiff, saying, ''He examined the abstract from beginning to end and he pronounced it a genuine title, which you will see by his enclosed letter. Hoping it will meet with your approval,'' etc. On December 24, 1908, defendant's attorney advised defendant's agents to present the abstract and warranty deed to plaintiff ''and demand payment for the land, and if he refuses then claim the forfeit.'' On January 7, 1909, plaintiff was notified that the deed and abstract had been deposited in the bank awaiting compliance on his part. On January 15, 1909, defendant's agents wrote to plaintiff as follows: *''Of course we know we were to make you a clear title to said land and we fully believe we have done so,* but your lawyer contends we have not and this calls us to a halt when our lawyer says we have . . . Now, as stated, we promise to make you a clear title to Mr. Shipman's farm in good faith and still agree if Mr. Shipman's title is not good

to make it good and will do so yet, but as our lawyers
differ, we know of no other course to take, so please
let us know what you intend to do about it.'' How
could plaintiff know that a clear title was being fur-
nished if he was bound to consummate the deal before
receiving the abstract? Why was the affidavit made
and filed for record seven days after the contract was
signed and attached to the abstract, unless it was with
the intention of attempting thereby to make up the
title? And, above all, why was the abstract sent to
the vendee before the consummation of the deal on
his part if the intention of the parties under the con-
tract was that it was to be furnished afterwards? If
the agreement meant simply that the vendor was to
furnish an abstract as a condition precedent, then un-
der the authorities hereinafter cited he was bound to
furnish an abstract showing clear title. It does not
stand to reason that plaintiff would agree to pay down
$200 and then after waiting sixty days pay the bal-
ance after assuming the obligation of the deed of trust
which was on the land, and after that take a deed and
abstract with the chance of getting an imperfect title,
and, incidentally, a lawsuit. Business is not ordi-
narily done that way and courts will not construe con-
tracts so as to bring about such results unless it clearly
appears that the parties so intended. ''Where the
parties to a contract have given it a particular con-
struction, such construction will generally be adopted
by the court in giving effect to its provisions. And
the subsequent acts of the parties, showing the con-
structions they have put upon the agreement them-
selves, are to be looked to by the court, and in some
cases may be controlling.'' [9 Cyc. 588. See also,
Mathews v. Danahy, 26 Mo. App. 660; St. Louis Gas-
light Co. v. City of St. Louis, 46 Mo. 1. c. 127, 128;
Rose v. Eclipse Carbonating Co., 60 Mo. App. 28; Rei-
senleiter v. Kirche, 29 Mo. App. 291; St. Joseph Union
Depot Co. v. Railway, 131 Mo. 291, 31 S. W. 908; Meyer

v. Christopher, 176 Mo. 580, 75 S. W. 750; Welch v. Mischke (not officially reported), 136 S. W. l. c. 40.]

It is a well-known fact that few persons purchase real estate at the present time without first obtaining from the vendor an abstract of the record entries showing the condition of the vendor's title, and with the view of having such title passed upon by a lawyer of his own choice.

In the case of Taylor v. Williams (Colo.), 31 Pac. 504, the contract read as follows: "Rec'ed of C. M. Williams five hundred, payment on acc. of the sale of City Hotel property. Balc. of $7,000 to be paid on or before Arl. 1st on del. of warranty deed conveying clear title, with abstract." The abstract was furnished, as in the case at bar, and did not show perfect title and the vendee refused to perform and sued to recover the $500. The court, in affirming the judgment for the vendee, said: "We have no doubt but that the parties to this transaction, at the time of the execution of the writing and the payment of the $500, well undersood that the abstract should precede the execution and delivery of the warranty deed, and that it should receive the consideration of such solicitors as the vendee might select. This is confirmed by the action of Taylor (the vendor) in procuring an abstract, and in retaining within his possession the warranty deed, and his frequent consultation with parties having the abstract under consideration. It is nowhere claimed in this record that the abstract so furnished did show a perfect title. On the contrary it is insisted that notwithstanding the admission that the title was faulty, as shown by the abstract, yet nevertheless, in an action to recover back the money paid as part of the purchase price, the defendant was entitled at the trial to show that he had a complete and perfect title to the premises. We cannot agree with this contention. The contract was to furnish an abstract of title, and

such abstract should contain whatever concerns the sources of the title and its conditions. Not only should the descent and line of title be clearly traced out, and all encumbrances, all chances of eviction, or adverse claims should be shown, but material parts of all patents, deeds, wills, judicial proceedings, and other records or documents which touch the title, and also liens and encumbrances of every nature, should be set forth. And in every contract for the sale of real estate it is implied that the seller will, before the completion of the contract, show a good marketable title.''

Boas v. Farrington (Cal.), 24 Pac. 787, is a similar case. The contract provided that $5000 was to be paid at once and the balance within two years— ''title to be good, or the money to be refunded; party of the first part to furnish abstract of title to said land.'' The abstract was furnished, as in the case at bar, and did not show perfect title and the vendee refused to perform and sued to recover back his $5000, obtaining judgment. In affirming the judgment, the court said: ''The appellant contends that the contract did not require him to furnish an abstract showing a good title, or at most that he was not bound to furnish it at the time the defective one was furnished, or at any time before the time for the final payment of the purchase money; and that, as it appeared at the trial that he had a good title to the property, he was entitled to judgment. We cannot so construe the contract. It is apparent from the terms of the agreement, that the question of title was to be determined before the respondent's grantor could be required to make the second payment, as, at that time, the subsequent payments were to be secured, . . .'' See also, Brown v. Widen (Iowa), 103 N. W. 158; Kane v. Rippey (Ore.), 33 Pac. 936; Mastin v. Grimes, 88 Mo. l. c. 490; Thompson v. Dickerson, 68 Mo. App. l. c. 540; Ives v. Kimlin, 140 Mo. App. l. c. 301, 124 S. W. 25.

We hold that under the terms of the contract defendant was bound to furnish an abstract of title showing a perfect title in the vendor.

Having reached this conclusion, the inquiry is whether such an abstract was furnished. If not, plaintiff was entitled to recover back the $200. We have set for the facts concerning the condition of the abstract as furnished and it is unnecessary to repeat them. There is nothing in the abstract of title to show whether an administration was had of the estate of Isaac Shipman, the entry-man, and common source of title. The affidavit which was filed with the recorder of deeds and which was attached to the abstract of title states that the entry-man died in 1863, intestate. It is not probable that there are any outstanding debts against his estate, but the plaintiff had the right to obviate any chances of litigation. Contracts like the present are not only for title but for an abstract which shall show title, and nothing less than an abstract showing title will satisfy the agreement of the vendor in this case, no matter what the vendor's real title may be; and it is not enough that the title be in fact perfect, but it must further appear to be such on the records of the county as epitomized in the abstract. [Lessenich v. Sellers (Iowa), 93 N. W. 348, 350.] Upon failure of the vendor in a reasonable time to furnish the abstract agreed upon the vendee was entitled to rescind the sale and recover the money paid. [Loring v. Oxford (Tex.), 45 S. W. 395.] If there are any debts against the estate of the entry-man, they are not barred, because the Statute of Limitations does not run in favor of an estate during the time there is no administration. [Ayers v. Donnell, 57 Mo. l. c. 398.] "The settled rule in this state is, that the Statute of Limitations does not run in favor of an estate during the time there is no administration; or in other words, where the general Statute of Limitations is invoked in favor of an administrator as here, the time elapsing

between the death of his decedent and his own appointment must be excluded from the computation of time." [Little v. Reid, 75 Mo. App. l. c. 269.] "The rule is that where the decedent is the debtor, limitation does not run against his creditor in favor of his estate during the time administration is delayed." [Stanton v. Gibbins, 103 Mo. App. l. c. 267, 77 S. W. 95.] These autorities are conclusive in this case.

The statutes enacted by the General Assembly in 1909 (sections 188 and 189) were designed to meet just such a situation as we find disclosed in this record, but they are not available in this action because section 188 applies only to the future and section 189 provides that the bar shall not be absolute until two years after said section (189) went into effect. Hence, by the terms of this section, the title to this land would not be cleared of any debts the entry-man may have owed at the time of his death until during the present year, 1911.

Other errors are assigned, but under the view we have expressed it is unnecessary to give them consideration in this opinion.

For the reasons herein appearing, the judgment is reversed and the cause remanded with directions to the trial court to enter judgment for the plaintiff for the sum of $200 together with interest on that amount from the 13th day of November, 1908, at six per cent per annum, and for his costs. All concur.