## UNITED STATES TUNGSTEN MINES CO., Limited., v. LAUGHARN et al.

### No. 7020.

Circuit Court of Appeals, Ninth Circuit.

Oct. 16, 1933.

Irving M. Walker, Milton H. Schwartz, and Herman F. Selvin, all of Los Angeles, Cal. (Loeb, Walker & Loeb, of Los Angeles, Cal., of counsel), for appellant.

Reuben G. Hunt, of San Francisco, Cal., for appellees.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal by the United States Tungsten Mines Company, Limited, from an order of the District Court affirming an order of the referee in bankruptcy in respect to the disposition of certain funds held in escrow.

The pertinent facts are as follows: Watterson Bros., Inc., was adjudicated a bankrupt and Jess Hession was elected trustee. Later, Hession resigned and appellee Hubert F. Laugharn was chosen as his successor. Tungsten Products Company, a corporation, hereafter referred to as Tungsten Company, is also a bankrupt, and appellee Wm. H. Moore, Jr., is its duly qualified trustee. The first-named bankrupt claims to be the owner of a certain reduction and concentration mill, machinery, etc., and three certain unpatented mining claims, all located in Inyo county, Cal. The Tungsten Company also claims to be the owner of certain unpatented mining claims located in the same county, known as the Blizzard group of mines.

December 15, 1930, one Cecil S. Coan, as purchaser, entered into a written contract with said Hession, as trustee of the estate of Watterson Brothers, bankrupt, as seller, by the terms of which contract the latter agreed to sell to the former the following described property: " * * * That certain reduc-tion and concentration mill erected for the reduction and concentration of minerals, together with buildings, structures, machinery, mill equipment, including water and water rights, reservoirs, pipe lines, camp buildings, lodging house, mess house, stables, warehouses, saw mill and other structures used in connection with or for the benefit of the operations of said mill, which said property is located upon those certain recorded mining claims designated as Annex Claim, Pine Creek Claim No. 1 and Pine Creek Claim No. 2, which are located approximately 7¼ miles West from the Northeast corner of Section 32, Township 6 South, Range 31 East, 22½ miles West from Bishop, Inyo County, California; and * * * also * * * all or such part of said mining claims upon which the said mill, buildings, pipe lines, reservoirs and other structures and appurtenances, including all property hereinabove mentioned, are located"—upon the following terms: " * * * $25,000.00 in installments as follows: The sum of $5,000.00 as initial payment upon the said purchase price (of which $500.-00 has already been deposited); the further sum of $10,000.00 on or before one year from the date of this agreement; and the further and final sum of $10,000.00 on or before two years from the date of this agreement."

The contract provides as follows:

"(b) The parties hereto shall open an escrow with the Bank of America National Trust and Savings Association, Seventh & Olive Street Branch, in the City of Los Angeles, State of California, in which first party shall, upon the execution of this agreement, deposit his deed as Trustee in Bankruptcy of the estate of Watterson Bros., Inc., a corporation, duly authorized by order of the Referee herein, conveying to second party the property of the Bankrupt estate, consisting of * * * [the identical property described above].

"Second party shall, upon the execution of this agreement of sale, deposit in said escrow the sum of $4500.00 as the balance of the initial payment upon the purchase price of said property, as provided in subdivision (a) of this paragraph, with instructions that the said sum of $4500, together with the $500 already deposited with the attorney for first party, shall be paid to first party when there shall have been deposited in said escrow a certificate of title of the Inyo County Abstract Company, showing title in said first party to said properties, including the real estate hereinabove referred to upon which said property, together with the buildings, structures, equip-

ment, machinery and other appurtenances are situated, free and clear of any and all encumbrances, liens, claims, assessments, taxes or other obligations, except such claims or encumbrances as second party may waive by written waiver deposited in said escrow. * * *

"Said escrow shall be for a temporary period of ninety days from the date of this agreement of sale, with the right of second party to extend said period of escrow, if he may so desire, in order to permit the first party to perfect the title to said properties; and, when title is perfected, the escrow shall be permanent, and at the expense of second party. * * *

"(e) It is understood by the parties hereto that all tailings and other ore or metals upon the surface of said property which is the subject of this agreement of sale, belonging to the Tungsten Products Company, a corporation, bankrupt, and the Trustee in Bankruptcy of said bankrupt estate, a lease and purchase of which, together with the mining claims upon which the mines from which said tailings and other ore or metals were taken, is located, has been made contemporaneous with this agreement. Should for any reason the said Watterson Bros., Inc., Bankrupt, have any claim upon or any interest whatsoever in or to said tailings, other ore or minerals upon or within said properties, it is the intention of the parties hereto that the first party will by his conveyance, to be deposited in said escrow, include therein all right and interest of the said bankrupt estate therein and thereto. * * *

"(h) It is further understood and agreed that the bankrupt corporation, Tungsten Products Company, has heretofore duly and regularly conveyed to Watterson Bros., Inc., a corporation, the mill and equipment, including all the property hereinabove set forth as the subject of this agreement of sale, and including the mill site upon which the mill, buildings and structures are located, which said conveyance includes all or such part of the Annex claim, Pine Creek No. 1 claim and Pine Creek No. 2 claim on which is located said mill, store house, buildings and other structures and equipment, including water supply, water rights, pipe lines and all machinery, and facilities used in connection with said mill and milling operations, and that proper transfers were made from the Tungsten Products Company or its predecessor in interest to Watterson Bros., Inc. Should such transfers not be of record or should for any other reason such transfers not have been made or have been lost or destroyed or should for any other reason Tungsten Products Company have secured, by performing assessment work or by any other means or from any other sources, any right, title or interest in or lien upon said mill site and said real estate referred to, including camp site, reservoir site, water rights or other equipment or machinery or facilities included in this agreement of sale, then as an essential part of this agreement to be performed by first party before any further payments upon the purchase price of said property shall be due and payable, full and proper conveyances will be secured from the Tungsten Products Company, its Trustee in Bankruptcy, or from its predecessor in interest, so as to perfect in said Watterson Bros., Inc., and in the Trustee in Bankruptcy thereof, the title to said real estate upon which said mill, equipment, buildings, structures, water rights and machinery and facilities are situated.

"(i) It is further understood and agreed that it is the intention of the parties hereto that contemporaneously with the execution of this agreement for sale, the second party is entering into a lease and sale agreement for the purchase of the mines used in connection with the operation of said mill and all equipment therein, from the bankrupt estate of Tungsten Products Company, and that this agreement of sale is dependent upon the second party securing said lease and sale agreement from the Trustee of said bankrupt Tungsten Products Company and that said Trustee shall have the title to said mining properties free from any liens or encumbrances whatsoever and shall be able to make said lease and sale agreement.

"(j) This agreement shall bind first party, his successor or successors and his assigns, and shall bind second party, his heirs, personal representatives and assigns, provided that second party shall not transfer this contract of sale or any interest therein without the written consent of first party, except that consent is hereby given that second party shall be permitted to assign this contract of sale and any and all interest therein and any interest in said property, to a corporation to be organized by him and in which he and his associates will control in the operation thereof. * * *

"(k) In the event any dispute shall arise between first party and/or second party and/or any escrow holder provided for herein in connection with this agreement and its operation and effect, such dispute shall be heard and determined by the said Referee in

Bankruptcy upon reasonable notice; and the determination of such Referee in Bankruptcy shall be binding upon all parties, subject to the right of appeal. * * *

"(m) Time is of the essence of this agreement, and the failure or neglect by first party to take immediate advantage of any of his rights hereunder shall not operate as a waiver of any breach by second party and shall not prevent first party from enforcing any of such rights at any time. The time for performance by second party, as herein specified, can only be extended by a writing signed by first party, and shall not be enlarged by the pendency of bankruptcy, insolvency, receivership, probate or guardianship proceedings, or by an assignment for the benefit of creditors. No waiver by first party of any of his rights hereunder, or any obligation of second party hereunder, shall be binding unless the same is in writing and signed by first party. The terms and conditions of this agreement can be changed, modified or altered only by a writing signed by both parties. * * *

"(o) It is understood by the parties hereto that second party will, immediately upon his taking possession of said property, make an inventory thereof, including buildings, structures, machinery, equipment and all property covered by this agreement of sale, a copy of which inventory will be submitted to the first party for his approval, and upon the approval thereof shall be annexed to this agreement and become a part hereof as 'Exhibit B.'"

It will be observed that the trustee's agreement is to sell and convey only the property specifically described in the contract, and, by subdivision (e) of the contract, to convey to the Tungsten Company any interest the Watterson estate might have in and to the tailings and other ore or minerals upon or within said properties, meaning upon or within the Blizzard group of mining claims, hereinafter referred to. This point will become important later when we come to consider the Tungsten contract.

In this connection, we refer to the following paragraph of the contract: "Whereas, the first party, for and in consideration of the covenants and agreements on the part of second party hereinafter contained, desires to sell to the second party and second party, for and in consideration of the transfer of said property free and clear of all liens and encumbrances, desires to purchase from the first party the said property, pursuant to an order of confirmation made by the above entitled court in the above entitled proceeding on December 5th, 1930, a certified copy of which said order is hereto attached as Exhibit 'A' and made a part hereof."

Exhibit A, therein referred to, does not appear in the record, and from the language of the paragraph quoted we must conclude that it conferred upon the trustee of the Watterson estate authority to sell and convey only the reduction and concentration mill and the three mining claims described in the contract. It thus appears that Hession, as trustee of that estate, in executing a conveyance of an undivided interest of the estate in the Blizzard group of mining claims, acted without authority of the court or the creditors of the estate.

On December 12, 1930, said Cecil S. Coan, as purchaser, entered into a contract with Wm. H. Moore, Jr., trustee of the Tungsten Products Company, a bankrupt, as seller, by the terms of which the latter agreed to convey to the former "certain mining claims, mining interests, ore, minerals, tailings and mine equipment, located approximately 7¼ miles West from the Northeast corner of Section 32, Township 6 South, Range 31 East, 22½ miles West from Bishop, Inyo County, California, the said mining claims being described as follows:

1. Blizzard
2. Blizzard No. 1
3. Blizzard No. 2
4. Blizzard No. 3
5. Blizzard No. 4
6. Annex Claim
7. Annex Claim No. 1
8. Annex Claim No. 2
9. Pine Creek Claim No. 1
10. Pine Creek Claim No. 2
11. Pine Creek Claim No. 3

and a one-quarter interest in the La Despreciada Mine in the Cerro Gordo Mining District near Keeler, California," for the sum of $136,905.00, payable $6,000 as an initial payment and the balance in installments over a period of years. This contract, like the one of Hession, trustee of Watterson Brothers, contains a provision for placing the initial payment, less $500 which had theretofore been paid, in escrow, "with instructions that said sum of $5,500.00 together with the $500.00 already deposited with the attorney for first party, shall be paid to the first party when there shall have been deposited in said escrow a certificate of title of the Inyo County Abstract Company, showing title to said properties in the said first party free and clear of any and all encumbrances, liens, claims, as-

sessments, taxes or other obligations, except the claims of A. H. Swallow, William H. Vaughn and others, which claims are being purchased under another escrow contemporaneously herewith, such escrow to be at expense of first party, and except also such claims or encumbrances as second party may waive by written waiver deposited in said escrow."

This escrow likewise was for a temporary period of ninety days. The contract also contains provisions similar, if not identical, to paragraphs J, K, M, and O of the Watterson Brothers contract, and concludes with the following provision: "It is understood and agreed that the bankrupt corporation Tungsten Products Company has heretofore duly and regularly conveyed to Watterson Bros., Inc., a corporation, the bankrupt estate of which is now being administered in the above entitled court, Jess Hession being the duly appointed Trustee in Bankruptcy thereof, the mill and equipment and certain personal property used in and about the said mining operations associated and connected with said mill and equipment, the mill site upon which the said mill, buildings and appurtenances are located and which said mill site is located upon or within the property covered by this lease and agreement of sale, that is, upon the said Annex claim and that certain part of Pine Creek No. 1 and Pine Creek No. 2 claim on which is located store houses, buildings, other equipment, including the equipment for water supply, water rights, structures, pipe lines and facilities used in connection with said mill and mining operations, and that proper transfers were made from the Tungsten Products Company, or its predecessor in interest, to Watterson Bros., Inc. Should such transfers not be of record or should for any other reason said transfers not have been made or have been lost or destroyed, or should for any other reason Tungsten Products Company have secured by performing assessment work or by any other means, or from any other source, any right, title or interest in or lien upon said mill site and said real estate referred to and said camp site or reservoir site, water rights, or equipment or facilities used in connection therewith, then as an essential part of this agreement to be performed by first party, before any further payments upon the purchase price of said property shall be due and payable, full and proper conveyances will be made to the said bankrupt estate of Watterson Bros., Inc., so as to perfect in said company and in the Trustee in Bankruptcy thereof, the title to said real estate upon which said mill, equipment and buildings

referred to are situated, and to all of said personal property connected or associated or used in conjunction with said mill, including any water rights. It is further understood and agreed that it is the intention of the parties hereto that contemporaneously with the execution of this lease and agreement the second party is entering into a contract for the purchase of said mill site and other real estate referred to, together with said mill and all equipment and appurtenances connected therewith, from the bankrupt estate of Watterson Bros., Inc., including all buildings, water supply, water rights and any and all property connected with said mill and buildings, and that this lease and agreement is dependent upon the second party securing a contract for the purchase from said Trustee of said bankrupt Watterson Bros., Inc., and that said Trustee shall have title to said property free from any liens or encumbrances whatever, and shall be able to make said sale."

Escrow instructions were prepared and signed by the respective parties and deposited with the escrow department of the Bank of America, at Los Angeles, Cal., on December 31, 1930. The instructions signed by Hession, trustee of the Watterson estate, and Coan, recite:

"The party of the 1st part hands you:

"(1) Trustee's Deed executed by Jess Hession, as Trustee in Bankruptcy * * * in favor of Cecil S. Coan, covering all that certain reduction and concentration mill erected for the reduction and concentration of minerals, together with buildings, structures, machinery, mill equipment, including water and water rights, reservoirs, pipe lines, camp buildings, lodging house, mess house, stables, warehouses, saw mill and other structures used in connection with, or for the benefit of the operations of said mill, and those certain recorded mining claims upon which the said personal property is located, and which are designated as 'Annex Claim', 'Pine Creek Claim No. 1' and 'Pine Creek Claim No. _____', * * * [the identical property described in the contract].

"(2) Trustee's Deed executed by Jess Hession, as Trustee in Bankruptcy of the estate of Watterson Bros., Inc., a corporation, in favor of Cecil S. Coan, covering certain real and personal property consisting of mining claims, mining interests, ore, minerals, tailings and mine equipment, more particularly described in said deed.

"The party of the 1st part will hand or cause to be handed you a certificate of title is-

sued by Inyo County Abstract Company covering the properties referred to in the trustee's deed described in item (1) on or before March 15, 1931, said certificate of title subject to the written approval in escrow of the party of the 2d part. * * *

"Upon receipt of the written approval of the above certificate of title by the party of the second part, you will immediately pay to the order of the party of the first part the sum of $4500.00. * * *

"In the event the certificate of title is not deposited with you on or before March 15, 1931, as hereinbefore provided for, you will return to the party of the 1st part or order the documents deposited by him, and return to the party of the 2d part or order the funds deposited by him, and terminate this escrow, unless extended by party of the 2d part. * * *

"It is understood that this escrow is contingent upon the placing with you and completion of an escrow between William H. Moore, Jr., as trustee in bankruptcy of the estate of Tungsten Products Co., a corporation, bankrupt, and Cecil S. Coan."

The material parts of the escrow agreement entered into between Moore, as trustee, and Coan, as set forth in the record, are:

"The party of the 1st part hands you:

"(1) Trustee's Deed executed by William H. Moore, Jr., as Trustee in Bankruptcy * *. * in favor of Cecil S. Coan, covering certain real and personal property situated in an unorganized mining district approximately 7¼ miles West from the Northeast corner of Section 32, Township 6 South, Range 31 East, County of Inyo, State of California, more particularly described in said * * *

"The party of the 1st part will hand or cause to be handed you a certificate of title issued by Inyo County Abstract Company covering the properties referred to in the deed described in item (1), on or before March 12, 1931, said certificate of title subject to the written approval in escrow of the party of the 2d part.

"Upon receipt of the written approval of the above certificate of title by the party of the second part, you will immediately pay to the order of the party of the first part the sum of $5500.00. * * * .

"In the event the certificate of title is not deposited with you on or before March 12, 1931, as hereinbefore provided for, you will return to the party of the 1st part or order

the documents deposited by him, and return to the party of the 2nd part or order the funds deposited by him, and terminate this escrow, unless extended by the party of the 2nd part. * * *

"It is understood that this escrow is contingent upon the placing with you and completion of an escrow between Jess Hession, as trustee in bankruptcy of the estate of Watterson Bros., Inc., bankrupt, and Cecil S. Coan."

It was then stipulated "that a certain certificate of title was handed into the escrow on March 10, 1931." The certificate was introduced in evidence by the trustees, and is as follows:

"The Inyo County Abstract Company, by Cecil I. MacFarlane, its Manager, hereby certifies:

"That an examination of the records in the offices of the County Recorder, Clerk of the Superior Court and County Tax Collector, in and for the County of Inyo, State of California, for matters of record, affecting or purporting to affect title to those certain unpatented mining claims located in Bishop Creek Mining District, Inyo County, State of California, known and designated as:

| | |
|---|---|
| Blizzard | Blizzard #1 |
| Blizzard #2 | Blizzard #3 |
| Blizzard #4 | Annex |
| Annex #1 | Annex #2 |
| Pine Creek | Pine Creek #1 |
| Pine Creek #2 | Pine Creek #3 |

(excepting any interest therein owned by A. H. Swallow and wife, if married, and W. H. Vaughn, also known as Wm. H. Vaughn, and his wife, if married), which claims are more fully described in the location notices thereof of record in said Inyo County, shows apparent title to said claims, subject to the paramount title of the United States, vested as follows, to-wit: in Wm. H. Moore, Junior, as Trustee in Bankruptcy of the estate of Tungsten Products Company, a corporation, and in Jess Hession, as Trustee in Bankruptcy of the estate of Watterson Bros., Inc., a corporation.

"(Note: No attempt has been made in this examination to segregate the several interests now held by the Trustees in Bankruptcy above shown, each of whom holds title by reason, in part, of deeds executed on December 16, 1930, recorded January 5, 1931, both of said deeds being executed by A. W. Higgins as Trustee of W. W. Watterson, Bankrupt).

"Free of Encumbrances

"Said claims are subject, however, to the following matters of record.

"(1) The effect of amended mining location notices on Blizzard Group and Annex Group of record in Inyo County filed by the Pine Creek Tungsten Company, a corporation, as assignee of an undivided ½ interest in said claims, which, however, did not appear to affect the title established by the original filing.

"(2) Proofs of Labor on the following claims for the years indicated do not appear of record, viz.:

"Blizzard #1 for 1918, Annex #1 for 1921, Annex #2 for 1921, Pine Creek for 1929 and 1930, Pine Creek #3 for 1929 and 1930.

"No Proofs of Labor on any claims for the year 1919 appear of record.

"Affidavits for the year 1918 indicate that but fifty (50) dollars was expended for that year on the following: Blizzard Placer Claim, Blizzard #2, Blizzard #3, Blizzard #4, Annex, Annex #1, Annex #2.

"Note: The Statutes do not require that affidavits of Labor shall be recorded, but merely required that the work or labor shall be performed.

"(3) The effect of a Certificate of Sale issued by the Sheriff of Inyo County to George G. Schleicher pursuant to execution and sale in Case No. 2112, Superior Court, which Certificate of Sale was thereafter assigned by said Schleicher to Watterson Bros., Inc., by instrument recorded in Book 'D', Page 134 of Assignments. No Sheriff's deed appears of record.

"(4) An action is now pending in the Superior Court of Inyo County, Case #2461, entitled: A. H. Swallow, Plaintiff, vs. A. E. Beauregard, C. C. Beauregard, Wm. H. Vaughn, James H. Sproul, and Tungsten Products Company, a corporation, seeking partition of the Blizzard Group hereinbefore described.

."This certificate is written upon the assumption that C. C. Beauregard is also known as C. D. Beauregard and that James Sproul is also known as J. H. Sproul.

"No guarantee is hereby made as to the validity of the title to the several interests hereinabove shown, or as to the regularity of any legal proceeding in regard thereto.

"Liability of this Company hereunder shall not exceed the sum of $1.00.

"Dated February 24th, 1931 at 8:00 o'clock A. M.
"Inyo County Abstract Company,
"By E. H. Suggs, for Manager."

On January 16, 1931, Coan assigned his interest in the contract to appellant, and notice of such assignment was given to appellees on March 12, 1931.

On March 17, 1931, the time for perfection of the title having expired, appellant elected to rescind the contracts upon the ground, among others, that the certificate of title was not as required by the contracts.

Appellant contends that the above certificate of title was insufficient and did not fulfill appellees' obligation to furnish a title showing their title free and clear of incumbrances, etc., as specified in the contracts, and that "it is the sufficiency of this document which furnishes the principal bone of contention between the parties."

The referee, over seasonable objection of the appellant, permitted the trustee to introduce parol evidence for the following purposes:

"1. To explain extrinsic ambiguities appearing in the contracts, in connection with the use of the following words, for which no definition or explanation is given in the contracts, and the meaning of which is debatable as they appear on the face of the contracts: a. Certificate of title; b. Inyo County Abstract Company; c. mining interests; d. ore; e. minerals; f. tailings; g. mine equipment; h. ¼ interest in the La Despreciada mine; i. buildings; j. structures; k. machinery; l. mill equipment; m. water and water rights; n. reservoirs; o. pipe lines; p. camp buildings; q. lodging house; r. mess houses; s. stables; t. warehouses; u. saw mills; v. other structures; w. said properties; x. real estate; y. appurtenances.

"2. To show the circumstances under which the contracts were made.

"3. To show the situation and identity of the subject matter of, and the parties to, the contracts, and, particularly, to identify the subject-matter of the items listed in (1) above.

"4. To explain certain terms of the contracts which were apparently used in a local, technical and otherwise peculiar signification, such as 'certificate of title of Inyo County Abstract Co.'

"5. To show the contemporaneous and practical construction of the contracts by the parties themselves by what they said and did

under them, in order that the referee might be placed in the position of the parties, and ascertain what they meant by what they said in the contracts."

Needless to say, the referee's findings were based largely upon such oral testimony.

The two principal questions presented are: (1) Whether the certificate or abstract of title furnished by the trustees complied with their contracts; (2) whether the contracts were so uncertain and ambiguous as to justify the admission of parol testimony for the purposes specified above. The determination of the first question will, we think, dispose of the entire case.

The contract with appellee Moore, trustee, in language too plain to be misunderstood, obligated him, within a given period of time, to furnish the purchaser a certificate showing title to the said properties in the said first party (the trustee in bankruptcy) free and clear of any and all incumbrances, etc. The evidence shows conclusively that he failed to discharge this obligation, and thus breached the contract. We are of the opinion that the outstanding title to the Blizzard group of mining claims, by virtue of the certificate of sale issued by the sheriff of Inyo county to George G. Schleicher, pursuant to execution and sale, which said title was afterwards assigned by said Schleicher to Watterson Bros., Inc., was itself sufficient to justify rejection of the title by appellant. It is not contended that any conveyance of that title was ever made to Moore, as trustee, or that the abstract of title, or the certificate, so shows.

It is contended by appellees, however, that Schleicher's title was conveyed to Watterson Brothers' estate and that the latter conveyed the same to Coan. This, in our opinion, did not relieve Moore, as trustee, from his obligation to furnish a certificate showing the title to be vested in him. This obligation on his part was a condition precedent to his right to claim the funds deposited in escrow. There is nothing in the contract requiring the purchaser of the property to accept such a conveyance in lieu of the trustee's obligation to furnish a certificate showing title in himself.

There is a sharp controversy between counsel as to whether in fact there ever was such a deed from Hession, trustee, to Coan. Appellee says there was and calls attention to paragraph (2) of the escrow instructions executed by Hession, which refers to the trustee's deed executed by Hession in favor of said Coan, the language of which has been quoted above. Appellant, however, contends that this deed was merely referred to in the escrow instructions, but was never offered or introduced in evidence before the referee. Whether the same was introduced in evidence and considered by the referee would make no difference in the result, since, as appellant well says, its effect upon the title is not reflected in the certificate of the abstract company.

Furthermore, the contract calls for a certificate showing title in Moore, as trustee, while the certificate as furnished by the abstract company specifically states that: "No attempt has been made in this examination to segregate the several interests now held by the Trustees in Bankruptcy above shown, each of whom holds title by reason, in part, of deeds executed on December 16, 1930, recorded January 5, 1931, both of said deeds being executed by A. W. Higgins as Trustee of W. W. Watterson, Bankrupt."

We note, furthermore, that there is nothing in the record to show that the trustee of Watterson Brothers' estate was ever authorized by the creditors of the estate, or by any court, to convey the interest or title of said estate in said Blizzard group of mining claims to Moore, as trustee of the Tungsten estate, or to Coan.

As said in Austin v. Shipman, 160 Mo. App. 206, 141 S. W. 425, 428: "* * * Contracts like the present are not only for title, but for an abstract which shall show title, and nothing less than an abstract showing title will satisfy the agreement of the vendor in this case, no matter what the vendor's real title may be; and it is not enough that the title be in fact perfect, but it must further appear to be such on the records of the county, as epitomized in the abstract. Lessenich v. Sellers, 119 Iowa, 314, 93 N. W. 348, 350. Upon failure of the vendor in a reasonable time to furnish the abstract agreed upon, the vendee was entitled to rescind the sale and recover the money paid. Loring v. Oxford, 18 Tex. Civ. App. 415, 45 S. W. 395."

It follows that the funds deposited in escrow under the terms of the contracts and escrow agreements in question should be paid over to appellant.

Reversed and remanded, with directions to enter a decree in conformity with this opinion.