## ALAN M. GUSTAFSON AND OTHERS v̇. DONALD G. GERVAIS, INDIVIDUALLY AND d.b.a. TANNER REALTY, AND ANOTHER.

189 N. W. (2d) 186.

August 6, 1971—No. 42446.

*Wayne A. Wentworth,* for appellants.

*Callinan, Raidt, Haertzen & Ramier* and *Richard J. Haertzen,* for respondents.

Heard before Knutson, C. J., and Otis, Peterson, Kelly, and Rolloff, JJ.

CLARENCE A. ROLLOFF, JUSTICE.*

Appeal from a money judgment against the defendants. The dispute arises out of a series of transactions involving sales of certain real property. Defendant Donald G. Gervais was a real estate broker doing business as Tanner Realty and had in his employ one Frank Blumberg as agent. There is some evidence that Blumberg may have had an undisclosed one-half interest in Tanner Realty. Plaintiff Alan M. Gustafson was the president of plaintiff Glen-Alan Company, Inc., and he and his mother were the only stockholders in that company. Bernard D. Cronick and his wife, Ethel, were the owners of premises known as 2832

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

Humboldt Avenue South, Minneapolis. This property was subject to a mortgage to Lutheran Mutual Life Insurance Company, which mortgage required monthly installments of $838.50. The Cronicks sold this property to Donald G. Gervais under a contract for deed, payable in monthly installments of $355 and Gervais also assumed and agreed to pay the monthly installments to Lutheran Mutual Life Insurance Company on its mortgage.

On October 31, 1964, Gervais and his wife, Emily, sold the property to plaintiffs George A. Thompson and his wife, Anna, under a contract for deed for a consideration of $210,000. On the same day, the Thompsons sold the property to Glen-Alan Company on a contract for deed for the sum of $218,320. The transactions apparently were a joint venture between the Thompsons and Mr. Gustafson and the Glen-Alan Company. The contract for deed from Gervais and his wife to the Thompsons recited a consideration of $210,000, of which $24,000 was acknowledged as having been paid. The $24,000 payment consisted of five other properties which Gustafson transferred to Gervais at an agreed value of $20,800; $2,000 cash paid by the Thompsons; and $1,200 cash paid by Glen-Alan Company. The properties transferred by Gustafson to Gervais were subject to various encumbrances, and the personal property therein was subject to chattel mortgages. One of the properties transferred was encumbered by a contract owned by the Thompsons in the amount of $9,868.16, which the Thompsons released at the time of this transaction. The balance of $186,000 was payable in monthly installments of $1,280 on the 5th day of each month, commencing December 5, 1964. In addition to and together with each payment, the vendees were required to pay one-twelfth of the amount of the annual real estate taxes, together with a tax escrow payment for the month of November 1964. The contract also required the vendees to pay the second half of the taxes due in 1964, together with any penalties, in six monthly installments beginning December 5, 1964. The November tax escrow payment was $442 and the following tax installments were $442. The

monthly tax installment and the $1,280 monthly payment thus amounted to a total of $1,722. The contract also required the vendees to make a payment of $3,000 on July 1, 1965.

Part of the consideration for the contract for deed from the Thompsons to Glen-Alan included the indebtedness of Glen-Alan Company to the Thompsons. That contract provided for a downpayment of $22,000 and recited that $186,000 of the purchase price was to be paid by the vendees assuming and agreeing to pay according to its terms the contract for deed between the Thompsons and Gervais and his wife. Despite the fact that Glen-Alan agreed to pay the $3,000 payment due Mr. and Mrs. Gervais on July 1, 1965, under the contract between them and the Thompsons, the Thompsons actually paid this $3,000 to Gervais on March 5, 1965.

Gervais sold, or otherwise disposed of, the five properties transferred to defendants by Gustafson but failed to pay some of the existing encumbrances on personalty, for which Gustafson remained liable and on which judgment was entered by B. W. Acceptance Corporation in the sum of $3,338.85 on May 5, 1966. Gervais also failed to pay the principal sum of $2,452.36 on an F. H. A. Title I loan for a garage on one of the five properties. He had agreed to make the payments on the indebtedness outstanding on the five properties.

Through May 1965, the plaintiffs made all payments required to be made by them and in addition had paid the $3,000 which was not due until July 1, 1965. As a result, Gervais had received more than enough to pay his installment obligations up to July 5. Under date of May 20, 1965, plaintiffs were advised that defendants had failed to make the payments on the Lutheran Mutual Life Insurance Company mortgage and had failed to pay the real estate taxes payable in 1965, totaling $5,298.34, plus interest and penalties. Plaintiffs had furnished more than sufficient funds with which to make these payments and the failure or refusal of defendants to make said payments was without excuse or justification. Plaintiffs informed Gervais that they

refused to make further payments until he had cleared up the delinquencies.

On or about July 30, 1965, the Cronicks caused to be served on all parties a notice of cancellation of the contract for deed to Gervais. Plaintiffs at that time did not have funds with which to reinstate the contract, and defendants failed and refused to make the necessary payments to reinstate the contract. As a consequence, on or about September 1, 1965, the fee owners took possession of said premises pursuant to the cancellation of the contract.

Plaintiffs then instituted the present action to recover amounts paid to Gervais. The court concluded they were entitled to recovery computed as follows: Pursuant to the terms of the contract the Thompsons paid $5,000 in cash and suffered the further loss of $9,868.16, the amount due on the contract which they released to Glen-Alan Company. Alan M. Gustafson suffered the loss of the properties transferred by him to Gervais at the agreed value of $20,800, less the balance of $9,868.16, representing the encumbrance released by the Thompsons on the properties transferred to the defendants by Gustafson. The total payments made by Glen-Alan Company under the contract for deed amounted to or exceeded $13,904. From that amount the trial court deducted $8,100, which it found to be the reasonable rental value of the premises during the time when Glen-Alan Company had possession. The net amount due Glen-Alan Company thus was $5,804.

Defendants on this appeal claim that plaintiffs were not entitled to rescission and that in any event there was no notice of rescission. These issues were not specifically raised in the pleadings and were not alluded to in the findings of the trial court. The answer simply alleged that plaintiffs were in default and therefore defendants could not meet their obligations on the primary contract and that plaintiffs' failure to redeem was a binding election of remedies and consequently plaintiffs were not entitled to recovery. Notwithstanding the status of the plead-

ings, the evidence shows that plaintiffs were entitled to rescission because of Gervais' failure to comply with his contract. In Liebsch v. Abbott, 265 Minn. 447, 451, 122 N. W. (2d) 578, 581, this court stated:

"A material breach of contract justifies the other party in rescinding. The failure or refusal of one party to an executory contract to perform constitutes a legal justification for the other party to rescind and demand to be restored to his former position, if he is himself without fault."

The general rule relating to remedies of a purchaser under a land contract is stated in Miller v. Snedeker, 257 Minn. 204, 216, 101 N. W. (2d) 213, 223:

"The rule seems to be well established in this state that on default by the vendor in a contract to convey, the vendee may maintain an action for the recovery of any payments he may have made on the purchase price. The vendee, however, cannot recover if he himself makes inexcusable default, and it is generally necessary for him to tender performance before suit. Generally a demand for a deed is a condition precedent to the action, but it is unnecessary where it is apparent that it would be unavailing. Notice, however, of rescission for default is a prerequisite to an action to recover payments, but it need not be in express terms or couched in any particular language. 20 Dunnell, Dig. (3 ed.) § 10098."

See, also, Brown v. California & Western Land Co. 145 Minn. 432, 177 N. W. 774.

Applied to the facts of the present case, it seems clear that plaintiffs were entitled to recover the payments which they had made on the contracts because they were free from inexcusable default. Gervais was the only party obligated to pay the monthly installments due under his contract with the Cronicks and the mortgage payments to Lutheran Mutual Life Insurance Company. There was no provision in the contract for deed between Mr. and Mrs. Gervais and the Thompsons nor in the contract for

deed between the Thompsons and Glen-Alan Company that required either of these vendees to make any payments on or to furnish money for the payments due from Gervais to the Cronicks and the mortgagee. Gervais may have expected to use the payments from the plaintiffs to meet his obligations to the Cronicks and the mortgagee, but even assuming this to be true, it seems clear that the payments he received from the plaintiffs during March, April, and May were not applied by Gervais to those obligations. He defaulted in his payments on the mortgage for the months of April, May, June, and July; he defaulted in his payments on the Cronicks' contract for deed for the months of May, June, and July; he defaulted in payment of the real estate taxes payable in 1964; and he defaulted in payment of the first half of the real estate taxes due in May 1965. On May 25, and again on June 1, Gustafson advised Gervais that he was willing and ready to make further payments as soon as Gervais paid the taxes due and brought the payments on the contract for deed and mortgage up to date. Plaintiffs' subsequent default occurred only after Gervais had made it clear that he would not remedy his default unless plaintiffs first paid additional moneys, an action which at that time they were under no obligation to undertake. Likewise, they were under no obligation to make further payments in the future unless Gervais paid up the delinquencies. Plaintiffs had an absolute right to insist that he take care of these delinquencies before they made any further payments. Gervais' failure to pay the delinquencies, thereby permitting the Cronicks' contract for deed to be canceled, and his failure to make redemption entitled plaintiffs to rescind. By permitting the time for redemption to expire, Gervais made performance of the contract with the Thompsons impossible. Certainly at that point, if not before, there was no need for notice of rescission. Defendants must have known that when it became impossible through their own conduct for them to perform their contract on which almost $30,000 had been paid by plaintiffs, an

action would follow to recover said sums. No formal notice was necessary under these circumstances.

Defendants argue that plaintiffs failed to contribute to a redemption but offer no authority indicating that plaintiffs were under any obligation to do so. Minn. St. 559.21 requires a canceling vendor to serve notice upon "the purchaser, his personal representatives or assigns" and provides that "the person served" may reinstate the contract and thus prevent its termination. It appears from that statute that a purchaser under a secondary contract would be entitled, when served with notice, to effect reinstatement of the primary contract, but there is nothing in the statute, nor in cases arising thereunder, indicating that such a purchaser is under any obligation to take such action or that his failure to do so is a bar to his rights against his vendor.

Since the statutory period of redemption has reference to a contract to which plaintiffs were not parties, it is difficult to see how they could be under any obligation to redeem where the cause for the cancellation proceeding was Gervais' default and not any default on their part.

Defendants' claim that the damages awarded were excessive is without merit. The amount allowed was what plaintiffs had paid on the contract. Defendants' contention that Emily Gervais should not have been joined is not tenable. She signed the contract for deed to the Thompsons as one of the vendors, and it is well settled that a wife who joins in covenants on her husband's deed is liable thereon. Security Bank v. Holmes, 68 Minn. 538, 71 N. W. 699. The contract for deed signed by Gervais and his wife provided that they would convey to the Thompsons by limited warranty deed. Under these circumstances, she is a proper party and liable for the damages sustained by plaintiffs.

Defendants claim that Frank Blumberg should have been joined as a party defendant. At one point in the trial Blumberg was so joined on motion of plaintiffs, but the court later reversed its ruling, stating that the fairness to Blumberg of joining him

at so late a stage in the proceedings was questionable, and dismissed Blumberg "without prejudice to any cause of action that may now or hereafter exist against Mr. Blumberg arising out of this entire situation." Defendants are not prejudiced by the dismissal of Blumberg. Any claim they may have against him can be asserted in a separate action.

The judgment is affirmed.

Affirmed.