LEMMON, Judge.
Plaintiff, a building contractor, filed this suit to recover the cost of repairing a residential building owned by defendant. After a trial on the merits the trial judge resolved conflicting versions of the occurrences and awarded plaintiff a portion of the amount demanded. Defendant has appealed.
The parties are in accord as to the initial events leading up to the dispute. Defendant’s home on Clearview Parkway in Jefferson Parish was in need of repair. When she and another lady decided to purchase a lot of ground jointly and build a double residence for their families, defendant contacted plaintiff (a longtime friend), who attempted to arrange a package deal for land acquisition and building construction. The overall plan included sale of the Clearview home.
Coincidently, plaintiff had just placed his family home on the market and had started building a new one on the adjoining lot. When the old home was sold faster than expected and plaintiff was unable to find suitable accommodations in the vicinity of the construction, he proposed to rent defendant’s home for approximately eight months (the estimated time required for completion of plaintiff’s new home) and then to purchase the Clearview residence as an investment. The parties verbally agreed on the two-step transaction, with an interim monthly rental price of $127.00, the amount of defendant’s mortgage installments, and a sale price of $20,000.00, the sale to take place when plaintiff completed his new home within a reasonable time.
In reliance on this agreement, defendant moved out and rented an apartment in August, 1972, and plaintiff’s family moved into the Clearview house. Plaintiff immediately undertook extensive repairs, working principally on weekends. He did not obtain defendant’s permission for or approval of this renovation, since he intended to buy the home; however, he testified that immediate repairs were necessary to make the home livable and also to place the home in condition to obtain the homestead financing required for his contemplated purchase of the property.[1] Defendant on several visits observed the repairs in progress, but was not concerned because she considered the house sold for all practical purposes.
The parties disagreed as to the events occurring thereafter. Plaintiff testified: Defendant’s plans to build a double fell through, and she didn’t get along with the noisy neighbors in the apartment building. Defendant therefore proposed to move back into the Clearview house, which had been substantially repaired. He still wanted to buy the house, but since he had no written contract, he agreed to forego the contemplated purchase as long as he was reimbursed for the .repairs. Defendant stated she would borrow the money and pay him upon receipt of an itemized bill. He moved out in January, 1973 and into his .new house (which was barely livable and was not completed until April). He then calculated his labor and materials and presented a bill dated March 13, 1973. Upon consultation with defendant’s attorney, he eliminated the profit markup and reduced the bill to $3,000.00.
Defendant testified: She wasn’t happy with apartment life, but planned to stay until she could buy a new house with the *620 proceeds of the sale of the Clearview house to plaintiff. In January plaintiff’s wife told her they could not afford to continue paying both her note on the Clear-view house and their note on the new house, and had decided to move in the new house although it was not completed. Plaintiff then moved out and ceased rent payments, and although she did not want to move back then (because of the necessity of changing schools during the term), she finally had to do so at the end of April because of the double burden of the apartment rent and the note on the Clearview house. She did agree to pay part of the repairs after a hysterical phone call from plaintiff’s wife about finances, but declined after seeking legal advice. In May a real estate agent approached her about selling the Clearview house, and the sale for $27,000.00 ultimately took place in July, 1973.
The trial court, noting the disagreement as to the reason for terminating the verbal lease-sale agreement, specifically found that defendant was no longer willing to sell for $20,000.00 and that defendant agreed to pay for the repairs made by plaintiff upon plaintiff’s agreeing to move out and to call off the sale.
While defendant’s version of the events was entirely plausible, we cannot say that the trial court’s resolution of the conflicting testimony was manifestly erroneous. Thus, under defendant’s agreement to pay for the repairs, as found by the trial judge, plaintiff is entitled to the reasonable value of his work. Furthermore, defendant undoubtedly benefited from the renovation work performed by plaintiff. Although defendant asserted that she would not have undertaken most. of the repairs and that the renovation did not suit her taste in any event, we emphasize that plaintiff performed the work in good faith in reliance on her promise to sell. That promise, although unenforceable for the purpose of compelling the sale of the property, formed a sufficient basis for plaintiff’s recovery of his reasonable expenses incurred in reliance on that promise, which was subsequently repudiated. The contract originally made by the parties did not contemplate this contingency, and under such circumstances courts should apply the moral maxim that no one ought to enrich himself at the expense of another. C.C. art. 1965. On this additional basis we conclude that plaintiff is entitled to the reasonable value of the work, notwithstanding defendant’s objections as to the necessity and the style of the renovation.
We are also unpersuaded by defendant’s argument that the renovation was of no benefit in obtaining a $27,000.00 sale price in July, because that purchaser was primarily interested in location and had to undertake extensive additional renovation in order to convert the house into a law office. Irrespective of the July sale, defendant’s property had been improved in value by plaintiff’s repairs as of January, the time that defendant took the house over again.[2] While the enhancement in value (not shown by appraisal or other evidence) was not necessarily equal to the value of plaintiff’s work, we hold that the latter value was the proper measure of the award under the overall circumstances of this case.
Finally, we reject defendant’s contention that plaintiff performed the repairs as a mere lessee and at his own risk. First, the agreement admitted by the parties was not a simple contract of lease for a specific term (until completion of plaintiff’s house), at which time the lessee would have only the right to remove improvements. The agreement, rather, specified other obligations at the end of the lease, namely to buy and to sell. Second, *621 the entire contract was repudiated before the end of the lease term, and the trial court specifically found that the repudiation occurred at defendant’s instance. We accordingly conclude that the codal articles . , ,. ,. , governing leases are not applicable under the facts and circumstances of this case.
As to the amount of the judgment, the trial court in oral reasons proposed to award $650.00 for repairing the central air conditioning unit, $638.40 for installing carpets in the bedrooms, $204.75 for replacement of the dishwasher, $85.00 for plumbing repairs, $178.92 for concrete to repair the walk and driveway, $55.41 for wallpaper for kitchen and hall, and $92.31 for carpentry materials, on the basis that each of these items was substantiated by an invoice. However, the judgment prepared by counsel listed $700.00 for the second item (which was the amount claimed for installing carpets and for cleaning and sealing the terrazzo floors), although the reasons specifically allowed only the carpet dealer’s invoice amount of $638.40 and specifically denied the balance of the claim for labor in cleaning and sealing the floors. The judgment also included $125.-00, the amount claimed for labor in breaking up and removing damaged portions of the walk and driveway, although the judge has specifically disallowed this claim in his oral reasons. Finally, a mathematical error of $11.00 in defendant’s favor was made in adding the three invoices for wallpaper. While we order the judgment amended to reflect these three differences, we find the award (as corrected) completely supported by the evidence.[3]
Since plaintiff did not appeal, we need not consider those items disallowed by the trial judge.
For these reasons, the judgment of the trial court is amended to decrease the award to $1,915.79. As amended, the judgment is affirmed.

Amended and affirmed.

. The parties agreed that the following repairs were performed: Making the central air conditioning unit operational (after .not operating for over a year) ; replacing the inoperative dishwasher; replacing broken glass in sliding glass door; constructing a sidewalk; repairing broken concrete in driveway; repairing sheet rock and painting or wallpapering most interior walls.; painting exterior doors; cleaning and sealing terrazzo floors and carpeting two bedrooms, bath and hall; and adding fill in rear yard ruts.

. Defendant admitted that she agreed .to a low price of $20,000.00 because the house was in need of repair.

. Defendant attempted to introduce evidence as to the cost of completing certain trim work, painting and wallpapering admittedly left incomplete when plaintiff moved. Plaintiff admittedly included the completed costs of these items in his bill, but that portion of the bill was disallowed by the trial judge. Therefore, defendant was not hurt by the exclusion of this evidence.