GUILD MANAGEMENT CO., a Missouri Corporation, Plaintiff-Respondent,

v.

Zale OXENHANDLER et al., Defendants-Appellants.

No. 36659.

Missouri Court of Appeals, St. Louis District, Division Two.

July 13, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Sept. 30, 1976.

Susman, Stern, Agatstein, Heifetz & Gallop, Sylvan Agatstein, Richard Sheehan, Pat Simons, St. Louis, for defendants-appellants.

Friedman & Fredericks, Clayton, for plaintiff-respondent.

RENDLEN, Judge.

Defendants bring this appeal from plaintiff's judgment for $57,750, including interest, in an action for real estate sales commission tried to the court without jury. We affirm.

In February, 1971,[1] defendant-sellers [2] engaged plaintiff-real estate broker to assist in selling two buildings in Clayton, Missouri, for an agreed fee of $50,000 per building, due on closing. No minimum or final sale price was required as a condition to payment of the fee, though an asking price of between $3,100,000 and $3,400,000 was suggested for the building known as 7711 Bonhomme. Plaintiff procured a buyer who purchased the "Bonhomme" building under contract of October 30 with closing November 19, 1971. Defendants refused to pay the commission, relying on plaintiff's letter of October 26, 1971, which they argue modified the agreement and waived the commission.

The trial court determined plaintiff had performed all the terms of its agreement and the purported modification or waiver was without consideration. Defendants concede in their brief that but for the October 26 letter plaintiff would be entitled to its fee and we accept facts thus admitted as true. *Baker v. Baker,* 274 S.W.2d 322,

---

1. Defendants place the meeting of the parties leading to the contract later, sometime prior to May 7, 1971. The trial court's findings, supported by substantial evidence, indicate February, 1971, as the month the oral agreement was reached.

2. Defendant Selig S. Oxenhandler (Zale Oxenhandler herein) is the spouse of defendant Joyce Oxenhandler and they are the only stockholders of defendant Selig Building Company, a Missouri corporation.

327[19] (Mo.App.1954); *Politte v. Wall*, 256 S.W.2d 283, 284[1] (Mo.App.1953). The case turns on the October 26 letter's meaning and its effect on the parties' prior agreement.

Plaintiff, initiating conferences with possible buyers, generated the interest of Liberty Loan Corporation, which it formally registered as a prospect by letter to defendants of May 7, 1971, as follows:

> In accordance with your request, I enclose herewith general details and specifications on the 7711 Building, Clayton, Missouri. This is submitted to you in connection with the interest of Liberty Loan Corporation to purchase or lease the said building. This office has been working with the said company which was first directed by the chairman thereof, Mr. David Lichtenstein, and subsequently with Mr. Everett Best. Our endeavors in this regard are following your previous instructions and authorization to offer the said building for sale or lease, and accordingly, if any deal is consummated, we expect to be protected on our fee and commission, being $50,000.00, as agreed, for a sale or a standard leasing commission upon consummation of a lease.
>
> Please indicate your acceptance and acknowledgement of this memorandum covering the above points.

On May 10 at defendants' request, plaintiff prepared a letter containing general information on 7711 Bonhomme, which was sent to Liberty Loan over defendant Zale Oxenhandler's signature. Shortly thereafter, by his own request, Oxenhandler became the primary in negotiations with Liberty.

We find the situation of the parties immediately prior to October 26 as follows: Plaintiff had tendered a buyer and was entitled to its fee, contingent upon final sale; defendants were not bound to proceed but 7711 Bonhomme had only one tenant occupying approximately 1250 square feet or 1.56% of the building's available 80,000 square feet while annual expenses exceeded $150,000; financial realities pressured defendants to sell;[3] defendants at their own request had assumed conduct of negotiations, including determination of the final price and being privy to all details knew (1) a sale was imminent for less than $2,900,000 and (2) there was no real prospect for a sale exceeding that amount.[4]

In this setting Zale Oxenhandler approached plaintiff's president, Arthur Loomstein, requesting "relief"[5] from the fee. Loomstein testified he knew Oxenhandler wanted a fee adjustment but Loomstein refused any modification of the $50,000 contract. Here are portions of the testimony demonstrating the parties' conflicting positions in this phase of their relationship. Defendant Zale Oxenhandler testified:

> "I had to do [sic] tell him [Loomstein, plaintiff's president] I can't go any further, *we'll have to forget the commission* and let me make a deal and he said well, best of luck, and I said I'd have to have *something in writing* and he said he'd get something . . . *But he evidently changed his mind.*" (Emphasis ours.)

Mr. Loomstein testified quite differently:

> "Q. [Direct examination]: . . . Prior to the time it [the October 26 letter] was dictated, until the last time you spoke with Mr. Oxenhandler, did you ever have any agreement . . . to waive any fee earned by Guild Management?
>
> "A. [Loomstein]: No. Never."

    *     *     *     *     *     *

---

3. Plaintiff's president testified that Oxhandler said the annual charges were "eating him up."

4. Defendant Zale Oxenhandler testified he informed Loomstein, plaintiff's president, of other prospective purchasers but no price appears to have been mentioned and Oxenhandler admitted none of the prospects moved to the Clayton area.

5. Defendants in their brief state: "[W]hen *relief* was requested by Oxenhandler from the commission obligation it appeared that the purchaser was ready to make the purchase . . . ." (Emphasis ours.) The testimony of defendant Zale Oxenhandler indicates the "relief" sought was waiver of all fees.

In response to questions by the court Loomstein testified:

"THE COURT: Did he say at that time why he needed the letter . . . what he wanted in [it] and if he did why he wanted that in it?

"A. [Loomstein]: Oh, there were so many conversations and Mr. Oxenhandler says so many things in our conversations, but I'm sure . . . of what he was after. He wanted an adjustment in the fee so he could get as much as he could and *negotiate my fee* and I told him *I would not do that.* (Emphasis ours.)

"THE COURT: If I understand it correctly your fee was to be Fifty Thousand Dollars ($50,000.00)?

"A. [Loomstein]: Right and I told him that he was making enough and if I could help him get more than that, and if he was to get more then I should get more.

"THE COURT: And what did he [Zale Oxenhandler] ask you to put in that letter, what specifically?

"A. [Loomstein]: I don't recall everything specifically . . . because if he had done that he could have written the letter and asked me to sign it."

Thereafter the following letter of October 26, 1971, ("something in writing" requested by Oxenhandler) was sent by plaintiff to defendant:

This letter will confirm our verbal modification to our previous agreement dated May 7, 1971.

It is understood that *you plan to offer* the 7711 building to Liberty Loan Corporation at a price of $800,000 above the first Deed of Trust (2,100,000) which includes the balance on existing contracts to complete the building.

If a sale is consummated at a *higher* price than above, we will then *negotiate a reasonable and appropriate commission* to be paid to Guild Management Company.

Please indicate your acceptance and acknowledgement of this agreement below. (Emphasis added.)

Defendants admit receipt of the letter.

The trial court found that by this letter the parties attempted to modify their original agreement but concluded the modification failed for want of consideration since "defendants were obligated to pay to plaintiff the sum of $50,000.00, contingent upon the final sale . . . immediately before the October 26, 1971 letter, and an offer by defendants to negotiate, contingent on a particular sale price, was not an agreement to do more than defendants had already agreed to do. . . ." *Citing R-Way Furniture Co. v. Powers Interiors, Inc.,* 456 S.W.2d 632 (Mo.App.1970), the court ruled "consideration is not present where one party merely agrees to do that which it was already legally liable to do for a greater consideration, nor is it present where one party agrees to do less than it is already obligated to do for the same or greater consideration."

Defendants contend: they retained the option of accepting or rejecting Liberty as a purchaser and had they opted for the latter could have effectively thwarted plaintiff's claim for fees; that when they offered plaintiff the choice of accepting modification or losing its fee because there would be no sale, plaintiff accepted the modification and in reliance defendants contracted to sell; and that entering this sales contract provides consideration for the commission contract modification.

■ Though we rule the case on other grounds, the trial court's conclusion that the purported modification failed for want of consideration appears to have merit. Defendants, retaining control of matters concerning terms of sale and price, knew or had reason to believe a sale for $2,900,000 (or less) was imminent. The October 26 letter confirms that *plaintiff also knew*[6] defendants planned to offer the building at $2,900,000. In this context, no benefit

---

**6.** From the October 26 letter: "It is understood that you plan to offer the 7711 building to Liberty Loan Corporation at a price of $800,000 above the first Deed of Trust ($2,100,000)," i. e. $2,900,000.

flowed to plaintiff if it accepted or rejected defendants' request to waive its fee. Plaintiff's Hobson's choice was either to accept defendants' demand and waive its fee or to reject the demand and be denied the fee by defendants' refusal to sell to Liberty. Similarly no real benefit to plaintiff could be anticipated under the terms of the October 26 letter, if we accept defendants' interpretation of the letter, by which plaintiff would waive its fee on a sale price of *less than* $2,900,000 but "negotiate a reasonable and appropriate" fee if the building per chance sold *for more than* that amount. Both knew the latter condition would not be met, and indeed four days later the $2,850,000 price was contracted.[7] We recognize consideration may be found if a promisee in reliance on a new promise changes its position; however, defendants' assertion they would not have sold the building without a waiver of fees has a hollow ring, given the staggering overhead and absence of other serious prospective buyers. While it is correct, as appellants point out in their brief, that "the consideration sufficient to support a contract may be . . . a loss or detriment to the promisee," *Feinberg v. Pfeiffer Co.,* 322 S.W.2d 163, 167[6] (Mo.App.1959), there could be consideration under this theory only if we make the attenuated assumption that defendants would refuse to sell to Liberty on the slender hope a buyer for more than $2,900,000 might some day appear. However, without ruling this principle's application here, we affirm the judgment for other reasons.

■ When the trial court reaches the correct result for reasons other than those adopted or perceived by the appellate court, the judgment will be affirmed. *Household Finance Co., Inc. v. Watson,* 522 S.W.2d 111, 113[2] (Mo.App.1975); *White v. Smith,* 440 S.W.2d 497, 511–512[21] (Mo.App.1969). Defendants' interpretation of the October 26 letter as a waiver is both strained and unrealistic. The letter does not state plaintiff waives its fee but rather that an appropriate fee would be negotiated if "a sale is consummated at a higher price [than

$2,900,000]." There is no statement that a lesser fee would be accepted if a lesser price were obtained. If, as Oxenhandler testified, Loomstein intended to waive the fee, he manifested a marked change of intention when writing the letter, for instead of waiver, quite a different proposal appeared, one not suggested in the testimony of either party.

■ The parties testified to the conflicting meanings each assigned the letter but "[w]e cannot decide the case on the basis of what the parties may have intended to say. Our function is to determine what the parties intended by what they did say." *Ackerman v. Globe-Democrat Publishing Co.,* 368 S.W.2d 469, 479[9] (Mo.1963) cert. den., 375 U.S. 949, 84 S.Ct. 353, 11 L.Ed.2d 276 (1963); *Willman v. Beheler,* 499 S.W.2d 770, 775–6[10] (Mo.1973).

"[A]n undisclosed or secret intention of one of the parties cannot be used to vary or contradict the intention expressed in the written instrument." *McIntyre v. McIntyre,* 377 S.W.2d 421, 426[11] (Mo.1964). If plaintiff intended to waive its $50,000 fee, it could have stated this vital fact; and if defendants expected such an agreement, upon receipt of the apparently contrary letter, they should have sought explicit language waiving the *commission before* consummating the sale. In their discussions Oxenhandler sought a fee adjustment and Loomstein refused. Had a waiver been agreed, as defendants now insist, defendants would not have left the matter to chance, seeking later to rely on the letter's vagaries. Nor can we say waiver was a matter "so clearly within the contemplation of the parties that they deemed it unnecessary to expressly stipulate with reference thereto . . . ." *Conservative Federal Savings & Loan Ass'n v. Warnecke,* 324 S.W.2d 471, 479[2] (Mo.App.1959); *Crestwood Plaza, Inc. v. Kroger Co.,* 520 S.W.2d 93, 98[11, 13] (Mo.App.1974).

■ The parties intended different things when the October 26 letter was written. Loomstein testified that he refused to

---

**7.** It cannot reasonably be suggested the parties believed that Liberty would pay more than $2,900,000 when defendants' offering price was then $2,900,000.

modify or waive the fee but Oxenhandler wanted "something in writing" so he could close the deal. Oxenhandler testified he wanted a "waiver" and Loomstein wished him "best of luck" and "said he'd get something . . . But he evidently changed his mind." There was no meeting of the minds to be reduced to writing because neither party accepted the demands or proposals of the other. The letter does not contain the "stated" intention of either. Oxenhandler, having read the letter, admits Loomstein "evidently changed his mind," thus acknowledging it contained no waiver. Loomstein on the other hand admitted he never intended to be paid an additional commission, yet the letter mistakenly or by design deals with that proposition as though agreed by the parties.

"To be effective as a modification, the new agreement must possess all the elements necessary to form a contract." *Smith v. Githens,* 271 S.W.2d 374, 379–80[18] (Mo.App.1954). Since there was no meeting of the minds, there was no contract of modification. " 'Where parties assume to contract, and there is a mistake with reference to any material part of the subject matter, there is no contract, because of the want of mutual assent necessary to create one. In this connection, it has been said that mistake does not so much affect the validity of a contract as it does to prevent its inception, and that mistake may be such as to prevent any real agreement from being formed, so that the apparent contract is void both in law and equity.' " *Fulton v. Bailey,* 413 S.W.2d 514, 518[3, 4] (Mo.1967).

▇ Appellants contend an ambiguous contract should be construed strongly against the party drawing it. *McIntyre v. McIntyre,* 377 S.W.2d 421, 426[12] (Mo. 1964). That rule of construction is to be applied only when other means of construction fail, *Robson v. United Pacific Insurance Co.,* 391 S.W.2d 855, 861[6] (Mo.1965); *McIntyre v. McIntyre, supra* ; *Katz Drug Co. v. Kansas City Power & Light Co.,* 303 S.W.2d 672, 680[6] (Mo.App.1957), and is not controlling in this case. Here there was no

modification agreement because the parties intended different things and neither conceded the other's position. There was no meeting of the minds before the October 26 letter and the letter did nothing to bridge this gap. As there was no agreement modifying or rescinding the brokerage fee contract, when defendants sold their building, plaintiff was entitled to its fee. The judgment is affirmed.

CLEMENS, P. J., and STEWART, J., concur.