**Horace CORLEY, Plaintiff-Respondent,**

**v.**

**Theodore KISER and Virginia Kiser, Defendants-Appellants.**

**No. 10326.**

Missouri Court of Appeals, Springfield District.

Sept. 14, 1977.

Dale H. Close, Richland, Arthur B. Cohn, Jr., Waynesville, for plaintiff-respondent.

Charles M. Wesley, Waynesville, for defendants-appellants.

STONE, Judge.

This is an appeal by defendants Kiser from a judgment of the Circuit Court of Pulaski County awarding to plaintiff Horace B. Corley (plaintiff Corley) the sum of $5,650.00 damages for defendants' breach of a "Contract of Sale of Real Estate" dated November 24, 1971 (the contract), in which plaintiff agreed to purchase certain real estate (sometimes referred to as the premises) [1] from defendants, Theodore R. and Virginia Kiser, husband and wife. Dorothy M. Corley, plaintiff's then wife, executed the contract with her husband; but, when the Corley marriage was dissolved on May 16, 1975, plaintiff became the sole owner of the buyers' contractual rights and interest under that contract.

The contract obligated plaintiff Corley to pay $5,000 in equal monthly installments of $87.67 each and all taxes for 1972 and thereafter; permitted plaintiff to pay without penalty all or any part of the balance due at any time prior to maturity; required defendants Kiser, upon request by plaintiff,

---

1. This real estate was described as: "All of Lot 1 in Block 1 and all of Lots 1 and 1A in Block 3 of Rench's Supplemental Plat of Rench's First Subdivision (sometimes referred to as Rench's Subdivision) of Pulaski County, Missouri. Sub- ject to any easements and subdivision restrictions of record." The record indicates that mail to occupants of the house on this tract was addressed to Devil's Elbow, Missouri.

to furnish an abstract of title showing a merchantable fee simple title in defendants; stipulated that, upon full payment of the purchase price and all accrued interest, defendants would convey the described realty to plaintiff by "general warranty deed"; stated that, in the event of default by plaintiff continuing more than ten days after written notice by defendants, "at their option and upon written demand," they might "declare the entire balance of the sale price immediately due and payable" and, if such "entire balance" were "not forthwith paid," they might (a) terminate all of plaintiff's rights under the contract and retain as liquidated damages all sums theretofore paid by plaintiff or (b) pursue any other legal remedy for breach of contract; and provided that the contract was not assignable by plaintiff without the written consent of defendants.

Joe Miller, a real estate agent at Waynesville (Miller), negotiated a sale of the property by plaintiff Corley to third parties, Ronald W. Cochran and Ida B. Cochran (third-party buyers), who gave Miller a check in the sum of $2,914.24 [2] to be held in escrow as a down payment on the property. On *June 1, 1973*, Miller apprised defendants Kiser of this transaction by letter addressed to their home in North Laurel, Maryland, and on *June 15, 1973*, he informed them by letter similarly addressed and mailed to defendants that *"[a]s soon as the abstract is ready* the Corleys are ready to pay the balance of $4,025.33 . . . on the contract."[3] (All emphasis herein is ours.)

On *August 21, 1973*, Miller again wrote defendants Kiser, enclosing (1) a warranty deed to be executed by defendants and (2) the Corley note with the request that it be marked "paid in full," and promising that, upon return of the executed deed and the

Corley note so branded as paid, "we'd be able to send them a check for the balance that the Corleys owed." Having had no response from defendants Kiser in the meantime, *early in September 1973* Miller contacted William C. Morgan (Morgan), manager of the Pulaski County Abstract Co., Inc. and Claude Morgan Insurance Agency, Inc., to act as an escrow agent; and on *September 7, 1973*, Morgan wrote defendants that they could send the executed deed and the note to the First National Bank at Waynesville, Missouri, which would "act as your agent in closing this transaction and being sure you receive the $4105.85 which is due to you."

Plaintiff Corley testified that the reasonable value of his labor and the materials he had "put into the house" was $7,000.[4] Stating that he had "spent approximately $5,000" for materials, he recalled expenditures of $3,100 for blocks, lumber and other materials purchased from a supplier in St. Robert, the major portion of which was used in building "a big porch" on the house, a $620 expenditure for air conditioning equipment in a central system, and a $430 expenditure for gas lines, duct work, and furnace repairs. Without supplying specific figures for expenditures in connection with other repairs and betterments, he stated that he had replaced "the wiring upstairs," that he "re-did" and "re-sheetrocked" the ceilings both downstairs and upstairs, that he had "completely paneled the downstairs apartment" with panels costing $8.15 per sheet, and that he had put a new roof on the house.[5] On the contract with defendants Kiser, plaintiff Corley had made monthly payments of $87.67 each from January, 1972 to May, 1973, inclusive.

---

**2.** The circumstances or considerations which prompted the deposit of this odd amount are neither disclosed nor relevant here.

**3.** Defendants-appellants' brief is flecked with an unexplained variety of figures said to have been the then amount of the unpaid balance on the contract, e. g., $4,025.83, $4,015.33 and $4,150.83, and plaintiff's exhibits are spotted with similar inconsistencies, e. g., $4,025.33 and $4,105.85. Counsel having accorded no

significance to these relatively minor variations, neither do we.

**4.** In his petition, plaintiff Corley prayed for damages in the sum of $7,500.

**5.** Defendants asserted that some of these improvements and expenditures had not been made by plaintiff.

Defendants maintain that the contract was not breached either by their failure to furnish the abstract as was requested in Miller's letter of June 15, 1973, or by their failure to send plaintiff the warranty deed and the note marked "paid in full" as was requested in Miller's letter of August 21, 1973. Rather, defendants assert that the contract was breached by plaintiff when he failed to make any monthly installment payment after May, 1973; and, when the installment payments due June 5, July 5, and August 5 were not received, defendants mailed Miller a typewritten letter dated *August 28, 1973*, which purported to be a ten-day notice letter contemplated by the contract. Although this letter declared "the contract terminated" and demanded $4,105.85 as "full payment of balance with the accrued interest," it also assured plaintiff Corley "a bank certified check" for $4,105.85 "will be excepted (sic)" and closed with the promise that "in turn" defendants would "sign deed and sign and mark prommissary (sic) note paid in full" and "return" those instruments to plaintiff Corley—an assurance of action by defendants Kiser obviously inconsistent with and repugnant to termination of the contract and forfeiture of plaintiff Corley's rights thereunder. In a handwritten postscript to this letter, defendants also charged that plaintiff Corley had failed to fulfill his obligation under the contract to pay all taxes.[6]

Defendants Kiser further testified that on *Saturday, October 13, 1973*, they visited Morgan's office in Waynesville and informed him that "[w]e had a deed [and] a note ready to execute" and that "[a]ll we ask is a bank certified check from the Corleys and turn it over to them." Morgan advised defendants to contact Miller; but, instead of attempting to do so that same day, they "went back home down to Devil's Elbow . . . [we] rented a place down there, Big Piney." When defendants returned to Waynesville on *Monday, October 15*, Miller was not in his office when they called there, so they made a second visit to Morgan's office and "asked him for the money again." Then finding that Miller had not yet returned to his office, defendants proceeded to the office of plaintiff Corley's attorney, Arthur B. Cohn, who informed them that Corley was in Florida and it would "take me [Cohn] about three or four days to get" Corley back to Waynesville.[7] Shortly thereafter defendants' attorney, Charles M. Wesley, by letter to Cohn notified plaintiff Corley to vacate the premises and to remove two abandoned automobiles therefrom and also informed plaintiff that he (Wesley) already had notified the Cochrans (third-party buyers), then occupying the premises, to vacate.

In due time, plaintiff Corley instituted this action for breach of contract; and, upon trial by the court sitting without a jury, plaintiff had judgment for $5,650 from which defendants have perfected this appeal. Our appellate review is "upon both the law and the evidence as in suits of an equitable nature" with "[d]ue regard . . . to the opportunity of the trial court to have judged the credibility of the witnesses" [Rule 73.01, subd. 3(a, b), V.A.M.R.], and we are directed to sustain and affirm the judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32(1) (Mo. banc 1976).

■ As respondent here, plaintiff Corley is clothed with the presumption that the judgment nisi is correct, and the burden is on defendants Kiser, as appellants, to establish affirmatively any alleged error. *Hardy v. McNary*, 351 S.W.2d 17, 20(2) (Mo.1961); *James v. James*, 248 S.W.2d 623, 627(8) (Mo.

6. Plaintiff testified that he had paid the taxes the first year but "the second time [second year] I went to pay them . . . they'd already been paid by the Kisers." Of course, the 1973 taxes were not payable and probably not even extended on August 28, 1973, the date of the notice letter.

7. At the trial plaintiff Corley explained that "I got transferred to Florida and wanted to sell the house . . . found a buyer, Sgt. Cochran."

1952); *Crossgates Home Ass'n. v. Blomquist*, 537 S.W.2d 429, 430(1) (Mo.App.1976); *Pallardy v. Link's Landing, Inc.*, 536 S.W.2d 512, 515(2) (Mo.App.1976); *State ex rel. Mayfield v. City of Joplin*, 485 S.W.2d 473, 476(8) (Mo.App.1972).

▇ Where, as here, no specific findings of fact were requested of or made by the trial court, on appellate review all issues of fact are deemed to have been found in accordance with the result reached and the judgment entered in the trial court [Rule 73.01, subd. 1(b)]; and, absent any assigned error, the judgment will be affirmed if it can be sustained on any reasonable theory supported by the evidence. *Lossing v. Shull*, 351 Mo. 342, 351, 173 S.W.2d 1, 5(1) (1943); *De Paul Hospital School of Nursing, Inc. v. Southwestern Bell Telephone Co.*, 539 S.W.2d 542, 545(1) (Mo.App.1976); *Collins v. Bowyer*, 524 S.W.2d 190, 193(1, 2) (Mo.App.1975).

With the preceding precepts in mind, we attend defendants' three "Points Relied On." The first two of those points are considered together, for, when so consolidated, they constitute a single attack on the sufficiency of the evidence to support the judgment nisi. Without descending into needless detail, we record our opinion that neither the evidence offered on behalf of plaintiff nor that offered on behalf of defendants was either uncontroverted (as defendants-appellants boldly assert in their brief) or unequivocal. In this situation, we necessarily " 'heed the well fixed principle that in court tried cases where the evidence conflicts sharply, appellate courts resolve the conflict by according due deference to the trial court because of its superior opportunity "to observe the conduct and demeanor of the parties and their witnesses and to weigh, evaluate and assess their testimony" ' [*Pittman v. Great American Life Insurance Co.*, 512 S.W.2d 857, 861–862[7] (Mo.App.1974)], and because the trial judge has leave to disbelieve all the testimony of any witness [*Southwestern Bell Tel. Co. v.*

*Crown Insurance Co.*, 416 S.W.2d 705, 711[6] (Mo.App.1967)] or to believe part of a witness' testimony and reject the rest. *North Side Finance Co. v. Sparr*, 78 S.W.2d 892, 894[4] (Mo.App.1935)." *Long v. Lincoln*, 528 S.W.2d 512, 513(3) (Mo.App.1975). See *Mangan v. Mangan*, 554 S.W.2d 418 (Mo. App.1977).

Therefore, even though defendant Theodore Kiser testified that after he received the letter of June 15, 1973, from plaintiff which requested an abstract, "June 15th[?] I called Morgan Abstract Company down here for an abstract," and the real estate agent Joe Miller testified,[8] "It's my understanding that an abstract was prepared by the Pulaski County abstract office," there was no showing that the abstract was delivered or tendered to plaintiff. Defendant Kiser stated that after he called and ordered the abstract on June 15:

> "July I called again down there and the abstract was not completed. August I called Morgan over here—abstract company, still the abstract's not completed. So about two days later I got a message from Morgan saying, 'Well, the abstract is completed and the fee is $75.00.' So I write—in turn wired him a—I mean, money order down here for him to send me the abstract. Then about the 28th of August, I believe it was, close there, why I got a relay message back that Mr. Miller was a-holding up my abstract and—on account of he was in a process for a sale of property now."

Even in this self-serving testimony, defendant did not suggest that plaintiff had been given the abstract which he had requested; and, although defendant's reference to Miller "holding up my abstract" could be construed as indicating that Miller had the abstract, it also could be interpreted as meaning Miller was delaying, for the benefit of someone other than plaintiff, the preparation or delivery of the abstract which was then in the possession and control of another party. The trial court, obli-

---

8. In this opinion, we purposely eschew any discussion or determination of Miller's agency or allegiance, although the record does move us to acknowledge our persuasion that his allegiance was not accorded fully or unreservedly either to plaintiff or to defendants.

gated as it was to weigh, evaluate and assess the testimony of each witness, and empowered as it was to accept or reject part or all of the testimony of each witness, apparently either (a) discredited the testimony of defendant Theodore Kiser explaining why plaintiff was not furnished an abstract or (b) in the light of all the circumstances, regarded Kiser's delay in obtaining and delivering the abstract as a failure to comply with the request therefor, and thus as a breach of the contract. Although from our vantage different conclusions might have been reached, we are unwilling to substitute our judgment for that of the trial court because of its superior opportunity to view the witnesses and evaluate their conduct, demeanor and testimony. Furthermore, the trial court reasonably might have reached its conclusion on the theory that, even if an abstract had been prepared, and even if Miller were shown to have been the agent of plaintiff, and even if Miller had had sufficient access to an abstract to permit a finding that an abstract was delivered to plaintiff, no abstract was offered in evidence and no proof was adduced that the abstract mentioned in evidence met the contractual requisite of "showing merchantable fee simple title to [the] premises in Sellers [defendants]," as contemplated and required by the contract. In fine, although the record is both confused and confusing, it was not error for the trial court to conclude, in the light of both what was, and what was not, said and introduced into evidence that:

First, a letter was sent to defendants on June 15, 1973, in which an abstract was requested for plaintiff Corley;

Second, Section 6 of the contract of sale provided that "When required by Buyers, the Sellers [Kisers] shall furnish an abstract of title to the said premises certified to then current date and showing merchantable fee simple title to said premises in Sellers;"

Third, no abstract was introduced into evidence; and

Fourth, there was no evidence that any abstract, much less one showing a merchantable title in defendants, was ever delivered or even tendered to plaintiff.

The significance of a contractual promise to furnish an abstract and the materiality of a breach of such promise have long been recognized by Missouri courts; [9] and, in the relatively few reported cases involving the right of the purchaser to sue at law for breach of contract where the breach was based solely on the vendor's failure to furnish an abstract, the right to maintain such an action has been upheld. 77 Am.Jr.2d Vendor and Purchaser § 273, pp. 435–36 (1975), citing *Hampton Stave Co. v. Gardner*, 154 F. 805, 806 (8th Cir. 1907) and *Coble v. Denison*, 151 Mo.App. 319, 320, 131 S.W. 719, 720 (1910).

■ It was also proper for the court to consider both the amount paid by plaintiff in making installment payments under the contract from January 1972 until May 1973, and the improvements made by plaintiff, since "one result of the failure of the vendor to furnish an abstract in accordance with his agreement in that regard is to entitle the vendee to rescind and recover the amount paid by him upon the purchase price, for the vendor is not entitled under those conditions to retain the amount deposited by the purchaser as a forfeiture for failure to complete his contract to purchase," [10] and "a purchaser is ordinarily entitled to compensation for improvements where the contract fails through a default

---

9. *Rudisaile v. De Beughem*, 361 Mo. 917, 921–22, 237 S.W.2d 166, 168(3, 5) (1951); *Danzer v. Moerschel*, 214 S.W. 849–50(3) (Mo.1919); *Leath v. Weaver*, 202 S.W.2d 125, 130(8) (Mo. App.1947); *Kling v. A. H. Greef Realty Co.*, 166 Mo.App. 190, 194–95, 148 S.W. 203, 205(1) (1912); *Austin v. Shipman*, 160 Mo.App. 206, 216, 141 S.W. 425, 428(3) (1911).

10. 77 Am.Jur.2d Vendor and Purchaser § 273, p. 435 (1975), citing, e. g., *Coble v. Denison*, 151 Mo.App. 319, 131 S.W. 719 (1910); *Sheehan v. McKinstry*, 105 Or. 473, 210 P. 167, 34 A.L.R. 1315 (1922). See also *Gustafson v. Gervais*, 291 Minn. 60, 189 N.W.2d 186, 190(3) (1971).

or failure of title on the part of the vendor." [11]

Since specific findings of fact were neither requested nor made, we cannot be sure that the court based its judgment on the foregoing theory. However, our concern is whether or not the trial court reached a correct result and not in determining what legal pathway the court may have followed to its judgment. *State ex rel. Patterson v. Tucker*, 519 S.W.2d 22, 24(1) (Mo.App.1975); *State ex rel. Pope v. Lisle*, 469 S.W.2d 841, 842(1) (Mo.App.1971). Even though based on an incorrect theory, the judgment should be affirmed if, on the evidence, such result properly could have been reached. *C___ L___ R___ v. L___ B___ R___*, 555 S.W.2d 372, 375(1) (Mo.App.1977); *Ehrle v. Bank Bldg. & Equipment Corp. of America*, 530 S.W.2d 482, 490–91(7) (Mo.App.1975); *Godsy v. Godsy*, 504 S.W.2d 209, 211(1) (Mo. App.1973). In short, the judgment nisi should be affirmed on appellate review if it reasonably can be sustained.[12]

■ Defendants' third and final "Point Relied On" is a charge that "[t]he trial court erred [in] denying defendants' request for special findings of facts and conclusions of law at the close of all the evidence." Rule 73.01, subd. 1(b), V.A.M.R. does require, inter alia, that the court "dictate to the court reporter, or prepare and file, a brief opinion containing a statement of the grounds for its decision and the method of determining any damages awarded" and also "include its findings on such controverted fact issues as have been specified by counsel." However, the same rule specifically states that the court is charged with this responsibility only "[i]f any party so requests before final submission of the case." [13] (Emphasis ours)

Although defendants' counsel boldly asserts, as reflected in his above-quoted third point and in his argument thereof, that he had made timely request for findings of fact and conclusions of law, we have seined the transcript in vain without netting any shred of support for that assertion in defendants' brief. Taking, as we must, the transcript which comes to us bearing the signed approval of opposing counsel,[14] it is clear that no timely request for findings of fact and conclusions of law was made. We necessarily conclude that defendants' third point is without merit. And, with no specific findings of fact having been requested or made, all factual issues must be considered to have been found in accordance with the result reached.[15]

---

11.  92 C.J.S. Vendor and Purchaser § 292(b), p. 172 (1955), citing, *e. g., Cancienne v. McGovern*, 325 So.2d 618, 620–21(3) (La.App.1976) (where owner leased and promised to sell to tenant but subsequently repudiated that promise, tenant could recover for improvements because "under such circumstances courts should apply the moral maxim that no one ought to enrich himself at the expense of another"); *Alexander v. Cleveland*, 79 So.2d 852, 855–56(8) (Fla. banc 1955); *Miles v. Graham*, 7 Ill.App.3d 17, 286 N.E.2d 497, 499(3) (1972); *Tompkins v. Sandeen*, 243 Minn. 256, 67 N.W.2d 405, 409(8) (1954); *Abraham v. Harvey*, 245 Miss. 449, 147 So.2d 639, 644(8) (1962).

12.  *Simpson v. Spellman*, 522 S.W.2d 615, 617(1) (Mo.App.1975); *Stallman v. Hill*, 510 S.W.2d 796, 798(3) (Mo.App.1974). See also *Edgar v. Fitzpatrick*, 377 S.W.2d 314, 318(12) (Mo. banc 1964); *Producers Produce Co. v. Industrial Commission of Missouri*, 365 Mo. 996, 291 S.W.2d 166, 170(1) (Mo. banc 1956); *Drydale v. Kiser*, 413 S.W.2d 506, 507(2) (Mo. 1967); *Guild Management Co. v. Oxenhandler*, 541 S.W.2d 687, 691(3) (Mo.App.1976).

13.  *Lopez v. Vance*, 509 S.W.2d 197, 204(6–8) (Mo.App.1974); *McNeill v. McNeill*, 456 S.W.2d 800, 808(9) (Mo.App.1970); *McIntosh v. White*, 447 S.W.2d 75, 77–78(1–4) (Mo.App. 1969); *Payne v. White*, 288 S.W.2d 6, 7–8(1–2) (Mo.App.1956); *Maas v. Dreckshage*, 244 S.W.2d 397, 403(4) (Mo.App.1951).

14.  *Pretti v. Herre*, 403 S.W.2d 568, 569(3) (Mo. 1966); *Holt v. Rabun*, 519 S.W.2d 561, 562(1–2) (Mo.App.1975); *O'Connell v. Roper Electric Company, Inc.*, 498 S.W.2d 847, 856–57(11) (Mo.App.1973); *Rawlings v. Taylor*, 477 S.W.2d 737, 739(1) (Mo.App.1972); *Gonseth v. K & K Oil Company*, 439 S.W.2d 18, 25–26(12) (Mo.App.1969); *Avalon Dev. Co. v. American Italian Const. & Dev. Co.*, 437 S.W.2d 702, 703–04(1) (Mo.App.1969).

15.  *Goldstein v. Studley*, 452 S.W.2d 75, 79(5) (Mo.1970); *Ramacciotti v. Joe Simpkins, Inc.*, 427 S.W.2d 425, 426(3) (Mo.1968); *McCullough v. Newton*, 348 S.W.2d 138, 142(2) (Mo.1961); *De Paul Hospital School of Nursing, Inc. v. Southwestern Bell Telephone Co.*, 539 S.W.2d

Convinced, as we are, that the judgment of the circuit court is supported by the evidence, it follows that the judgment of the circuit court should be and accordingly is affirmed.

BILLINGS, C. J., and HOGAN, TITUS and FLANIGAN, JJ., concur.

542, 545(1) (Mo.App.1976); *Cole v. Cole*, 516 S.W.2d 518, 520(3) (Mo.App.1974); *Gottlieb v.* *LaBrunerie*, 514 S.W.2d 27, 28(1) (Mo.App. 1974).